Booth, Judge,
delivered the opinion of the court:
On Monday, January 8, 1917, in open court the attorney for the estate of Charles F. Winton, deceased, presented a motion entitled “Motion under rule 90 for leave to file motion to amend the findings of fact and a request for findings of fact on certain questions of fact.” Accompanying said motion was a short typewritten brief, in which it is contended that the court erred in finding certain facts which claimants’ motion seeks to strike from the record, and likewise erred in its refusal to find certain facts material to the issues presented, the purpose of the pleadings being frankly avowed by a citation of the case of Driscoll v. United States, 131 U. S., Appendix CLIX.
In a proceeding so extraordinary as the above the court would be fully warranted in overruling the motion without comment. In view of the importance of the litigation and lest some misapprehension might possibly obtain that, the record in the case had not been the subject of consideration and deliberation during the more than ten years the same has been pending before the court, we deem it an added judicial duty to carefully state the reasons which impel the court to deny the motion.
The first petition of claimants in the case was filed on October 11, 1906, some few months after the passage of the first jurisdictional act. Between this date and April 10, 1913, when claimants filed their first request for findings of fact and brief in support thereof, innumerable motions intervened, all looking toward the preparation of the record in the case. Several volumes of testimony were adduced and printed. In the request for findings embodied in the brief of April 10,1913, nine specific requests were made, covering in detail the services of Mr. Owen before all the public tribunals engaged in or within whose jurisdiction the subject matter in controversy had been considered. The case was set for trial by the court on May 27,1913, the date being subsequently changed upon the insistence of the attorneys representing conflicting interests to the first Tuesday of the October term, 1913. On October 14, 1913, the argument of the case began and continued until October 21, 1913, one whole week.
*92 On December 7, 1914, the court, after diligently searching through a record of thousands of pages of testimony and briefs, in order to facilitate the disposition of the case as well as to specifically call attention to its conclusion in reference to the findings of fact and thereby set at rest the multitudinous objections and cross objections found in the respective contentions, prepared at length and in great detail tentative findings of fact which were announced under the following order:
“Forty-five days from this date will be allowed to all interested parties to file objections to findings and briefs. Thirty days thereafter will be allowed the defendants and all other parties interested to reply thereto, and the case is set for a healing on Tuesday, February 23, 1915.”
The tentative findings made covered the issues then presented and embraced, as the court then and now believes, a very careful consideration of every single request for findings made by either the claimants herein or any of the numerous intervenors, it being the express intention of the court in so doing to give to every litigant ample time and opportunity to assail the findings made and suggest errors of commission and omission. Forty-three distinct and separate findings were submitted and so arranged as to state the case as the court viewed it upon the issue of fact. On January 21, 1915, claimants filed their objections to said findings, supported by an exhaustive brief. Objection was specifically made to all the tentative findings respecting the claim of Winton and associates, except findings 1, 2, 8, 9, 11, 13, 14, 16, 17, and 31. With these findings the claimants seemed to be content. On February 20, 1915, claimants herein filed an exhaustive reply brief to the defendants’ objections to the tentative findings and vigorously contested every contention advanced, the claimants insisting upon additional findings as well as objecting to findings made. On the date stated in the court’s order of December 7, 1914, a lengthy oral argument was heard in support of the objections filed by each litigant and the claimants herein were given ample time in which to present their objections and argument.
On May 17, 1915, the court’s first opinion was announced. The tentative findings had been modified in some respects *93 and the court reviewed at length the issues of fact and law involved in the case. On August 9,1915, the claimants filed a written motion for a new trial and to amend findings of fact found by the court in its opinion and findings of May 17, 1915. This motion to amend the findings and conclusions of law filed on August 9, 1915, by claimants, was accompanied with the request that the motion be ordered to the law calendar. The said motion and the brief and argument in support thereof comprised over 100 pages oi printed matter.
The court on February 1, 1916, again heard an oral argument from claimants, as well as all intervenors, on their respective motions for amendment of findings and for a new trial. This argument consumed four full days of the court’s term, being finally concluded on February 5, 1916. On the 29th of May following the court allowed in part and overruled in part the respective motions to amend findings, modified in some particulars its written opinion, in which the Chief Justice concurred in a separate written opinion, adhering, however, to its first determination respecting the legal issues involved.
On July 25, 1916, the claimants’ attorney filed two typewritten motions, the first entitled “ Claimants’ motion for a new trial and a rehearing,” and was in the following language:
“ Comes now the plaintiffs and moves the court to grant a new trial or rehearing herein, and as reason therefor allege error of fact and error of law and newly discovered evidence in this: As to the newly discovered evidence, one Tams Bixby, who has heretofore testified in this case, has made a statement in a letter addressed to the Honorable Henry F. Ashurst, chairman of the Committee on Indian Affairs of the United States Senate, under date of September 23, 1915, of great importance to the interests of these plaintiffs and leads them to believe that said statement, together with such evidence as Mr. Bixby no doubt can give upon proper examination in the light of said statement, would cause the court to materially change the findings of fact in the particulars mentioned in Mr. Bixby’s said letter of September 23, 1915. Said letter is printed commencing on page 448 of the hearings before the Committee on Indian Affairs of the United States Senate, 64th Congress, 1st ses *94 sion, on H. R. 10385, being the Indian appropriation bill for the fiscal year ending June 30, 1917, and it is respectfully referred to and prayed to be made and considered a part hereof.
“ The errors of fact and errors -of law will be more fully and definitely pointed out in a brief to be filed in support hereof, in accordance with a motion this day made for leave to extend the time for the filing of a brief in support of this motion.”
The second motion, entitled “ Plaintiffs’ motion to extend the time for the filing of motion for a new trial and brief in support thereof,” was in the following words:
“ Comes now the plaintiffs and moves the court to extend the time six months beyond the time- allowed for the filing of a motion for a new trial and brief in support thereof, as required and provided for in rules 90 to 95, inclusive, for the reason that it is impossible to comply with the terms of said rules in the sixty days therein allowed, owing to the fact that the attorney for the plaintiffs has not had time to confer with his clients, particularly the plaintiff Owen and Mr. Winton’s administrator.”
The court being then in recess, the motion went to the Chief Justice, in accordance with the rules of the court, and the following entry was made by him upon the motion:
“The motion to extend six months is overruled. A motion which does not comply fully with the rules having been made by the claimants, they are allowed until the first Monday in October, 1916, in which to amend their motion for a new trial and file brief as required by the rules.”
The docket entries covering this matter show that on July 25, 1916, the same day the motion was filed, a copy of the same was duly served upon the defendants, and thereafter, on August 4, 1916, the defendants filed their brief in opposition thereto. The court was in session on the first Monday in October, 1916. The claimants filed no brief, did not appear in court, did not ask any further time, and took no steps to comply with the rules of the court. The motion was finally overruled by the court on December 11, 1916, nearly five months after it had been filed.
Eules 94 and 95 of the court provide:
“ 94. A motion by the claimant upon the -ground of newly discovered evidence will not be entertained unless it appear *95 therein that the newly discovered evidence came to the knowledge of the claimant, his attorney of record or counsel, after the trial and before the motion was made; that it was not for want of due diligence that it did not sooner come to his knowledge; that it is so material that it would probably produce a different judgment if the new trial were granted, and that it is not cumulative.
“ Such motion must be accompanied by the affidavit of the claimant or his attorney of record, setting forth:
“ First. The facts in detail which the claimant expects to be able to prove, and whether the same are to be proved by witnesses or by documentary evidence.
“ Second. The name, occupation, and residence of each and every witness whom it is proposed to call to prove said facts.
“ Third. That the said facts were unknown to either the claimant or his attorney of record, and, if other counsel was employed at the trial, were unknown to such counsel until after the close of the trial.
“Fourth. The reasons why the claimant, his attorney of record, or counsel could not have discovered said evidence before the trial by due diligence.
“ 95. Motions for a new trial must also be accompanied by the brief of the moving party, a copy of which must be served upon the opposing party, who may file his brief in response thereto. The motion will be considered by the judges, in conference upon such briefs and affidavits, if any, and will there be decided or sent to the law calendar for argument.”
From this record alone the court is fully warranted in not only overruling the request but the motion made as well. The claimant, for reasons undisclosed to the court, failed to avail himself of a privilege extended by the rules, notwithstanding he was given the unusual period of nearly five months so to do.
The motion itself is, however, upon the merits, devoid of favorable consideration. Mr. Tams Bixby was examined by the defendants as a witness in this case on September 8, 1908. The then chief attorney for the claimants was present in person at the taking of said deposition and cross-examined the witness in great detail. In fact, the testimony of Mr. Bixby consumes 30 pages of the printed record in this case, most of which is cross-examination. The witness was vigorously interrogated as to the position of the Dawes *96 Commission from every possible angle of this controversy, and a careful examination of his testimony must lead to the inevitable conclusion that no material fact escaped being called to his attention.
Aside from the very obvious fact that the court’s findings show specifically the proceedings of the Dawes Commission and their attitude toward the enrollment of the Mississippi Choctaw Indians, it is to be especially noticed that claimants’ attorney now insists upon a reexamination of the witness because of the belated information coming to him at least on or before July 25, 1916, in a letter written by Mr. Bixby on September 23, 1915. This case was argued upon a motion for a new trial and to amend findings February 1, 1916, about four months after the letter came into existence, and absolutely no valid reason has been assigned for the failure to produce it then. The letter itself would, of course, be inadmissible, but, granting arguendo that it is, the court in considering the same can find no fact stated which would in any manner disturb the judgment rendered. The Dawes Commission was charged with certain duties by acts of Congress, its jurisdiction was circumscribed and its duties defined by law, and whenever, as in this case fully exemplified, it failed in detecting the intent of Congress as expressed in the acts governing the commission, supplementary legislation corrected the error and righted the wrong. Mr. Bixby’s individual opinion is in nowise in issue, and his official conduct must be judged from the official reports of the commission of which he was a single member; these we have set forth in detail.
The motion was overruled without argument, as the docket entries attest. It in no important particular complied with the well-known rules of the court, and was otherwise devoid of merit. This case unfortunately intervenes to halt important proceedings connected with the management and control of the Indian lands allotted. It has been considered, as before observed, for more than 10 years. If litigation is ever to close and causes ever to be finally determined, belated motions tending toward interminable delay must at least comply with the rules of the court, themselves liberal and *97 obviously just, before the court would be justified in reopening a record already extending to thousands of pages of printed matter. The defendants filed a brief in opposition thereto; the claimants never afforded the court any further enlightenment than the brief facts set forth in the typewritten motions herein reproduced.
Treating the motion now at issue, without first going into the specific requests made, we must first pause to consider the same from the standpoint of substantive right, keeping in view the present state of the record, the complications which must follow, the rules and practice of the court, and what, if any, injustice follows from its denial, recognizing our right to grant or deny the same in accord with an exercise of sound judicial discretion with respect thereto.
The claimants, in their three preceding requests for findings of facts, formulated the same in narrative form; this is the first motion wherein alternative requests for finding as to specific facts is found. Heretofore, then, it is apparent from the record, claimants have been content to follow the usual and ordinary forms of pleading employed in the presentation of cases to the court. It is likewise obvious from the express allegations of the motion that the requests now made have not heretofore been requested in either narrative or alternative form, and the reason for this omission does not appear.
Again, it is pertinent to observe that the last opinion of the court in the case was announced May 29,1916, and it was not until January 8, 1917, that this motion was filed, although the court has been in session, with the judges present, since the first Monday in October, 1916, and the clerk’s office is open every day, except legal holidays, for the reception and filing of motions.
The case itself from the pleadings and record concerns not alone the rights of the claimants making the present motion but at least eighteen other claimants, each preferring a claim for compensation for personal services rendered the same Indians, many of whom have taken an appeal from the judgment of the court to the Supreme Court, and the record therein is now in course of preparation. The case therefore presents a somewhat anomalous condition in that a large *98 number of the parties have applied for appeals to the Supreme Court, and these applications were granted on December 11, 1916, while the claimants herein by their motions herein filed after the appeals were.allowed would, if the motions be granted, keep the case in this court, and thus as to some the case would be in the Supreme Court and as to others the same case would be in this court. In the event of permitting the allowance of this motion, notice must be served upon each intervenor and the defendants as well, time must be extended for the filing of additional briefs, and an oral argument, despite the fact that the claimants have stated they did not desire one, must be had and the final disposition of the case postponed for an indefinite period. The case, as above set forth, has been pending for ten years, and the docket entries disclose a list of motions filed running well into the hundreds. If litigation is to reach a finality within a reasonable length of time and an argument going in support of such a contention is at all available, it is extremely pronounced and effective in the present instance. In ordinary court procedure it is quite unusual to persistently move for a rehearing after a cause has been finally decided upon two previous motions for a new trial.
Rule 90 of the Court of Claims is consonant with the usual and ordinary court rules designed to regulate court practice and promptly dispatch court business. It provides in substance that motions for a new trial shall be filed within 60 days from the date of judgment and expressly limits the number of said motions except by leave of court. The exception in the rule is neither extraordinary nor difficult to understand. It was never intended, and has never been so construed, as at all permissive of innumerable motions designed to bring in review for a second, third, fourth, or fifth time the findings of the court upon allegations of error made by the parties and in most instances suggested by the findings theretofore made. The reservation was inserted for the express purpose of enabling litigants to point out some obvious error, some substantial omission which they may earnestly believe would affect the decision of the court or redound to their benefit. It is not susceptible of a conten *99 tion that it is available to bring again in review the whole case in all its aspects, or to be used as an instrumentality to procure another argument of the whole controversy upon the same record. Ample opportunity is afforded both claimants and defendants to present their requests for findings and to object to and propose amendments to the facts found by the rules of this court. There is no rule of the court which in any manner restricts or denies the rights of litigants on appeal to the Supreme Court or works to their injury in making up the record in the case. Nineteen court days upon various occasions and in response to various requests were consumed in the oral presentation of this case. To even approximate the volume of motions and papers filed herein would be almost impossible. Suffice it to say that we have no hesitancy in averring that the record shows that of all the involved and tedious cases submitted to the court, no parties litigant have been accorded a wider latitude in pleadings and motions or been given a more careful and patient consideration of the innumerable conflicting interests than in the present cause.
The rules of the Supreme Court relative to findings of the Court of Claims are to be found on page VII of the 9th Wallace Reports. Rule IV adopted by the Supreme Court provides that the Court of Claims shall make and file their findings of fact and their conclusions of law in open court before or at the time they enter judgment in the case. Rule V provides as follows:
“ In every such case, each party, at such time before trial, and in such form as the court may prescribe, shall submit to it a request to find all the facts which the party considers proven and deems material to the due presentation of the case in the findings of fact.”
These rules were made at the December term, 1869, of the Supreme Court and have been followed since.
In United States v. Adams, 9 Wall., 661, the appellants resorted to certiorari in an effort to bring certain facts alleged to be part of the record in this court before the Supreme Court, the Court of Claims having omitted to find them. The Supreme Court denied the writ but issued an *100 order remanding the case, with instructions to find whether or not certain facts were proven in the record. In deciding the case the court said:
“ But we can not give the Court of Claims any directions as to what finding it shall make or how it shall proceed to make up its findings on the points in question. If that court should refuse, with the proper evidence before it, to find a material fact desired by either of the parties, the proper remedy would be to make a 'request that such finding be made, and to except in case of refusal. Perhaps an additional rule on the subject would make the rights of the parties and the duty of the court less ambiguous than they now are.” See rule, supra.
In Mahan v. United States, 14 Wall., 109, the appellant in the Supreme Court sought to invoke the rules above set forth in an effort to have the evidence in the Court of Claims brought before the Supreme Court for review, predicating the contention upon a refusal of the Court of Claims to find a specific fact in the specific way requested. The court said:
“ But it was never supposed that the party would ask or the court must find the fact to be as the party claimed it, and if they did not that he could, for that reason, bring the whole testimony here to show that he was right.
“ The rule does say that if the Court of Claims refuses to find as prayed the prayer and refusal must be made part of the record. The remedial purpose of this rule is that when a party has, in writing, indicated a specific question of fact, on which he desires the Court of Claims to make a finding, and the court has neglected or refused to do so, this court may be able to determine whether the question is one so necessary to the decision of the case that it will send it back for such finding.
“ In the present case the Court of Claims did make a very explicit finding on the question of fact presented by the request of plaintiff, and this is all the rule required, though the finding is contrary to her averment.”
In United States v. Driscoll, supra, the question of proper procedure under the foregoing rules was directly passed upon, and in refusing an order of remand the Supreme Court said:
“The object is to present the question here as upon an exception to the ruling of the court below in respect to the materiality of the fact. For that purpose it must have been *101 submitted to the court in a written request, as provided by the rule. Nothing of the kind appears here. While other requests were made, this was not, and the record upon its face does not show that the court has omitted to pass upon any fact necessary to the decision of the case.”
From the viewpoint of established rules, both in the Supreme Court and in this court, and in the light of the decisions of the Supreme Court cited, it is manifest that the motion herein could be overruled for several reasons: First, because it comes too late; second, it seeks in some phases to present new issues; third, it is not supported by briefs; and fourth, no reason is assigned for failure to comply with the rule. But there is an additional reason. It is to be noted that the claimants’ present request is “ for findings of facts on certain questions of fact.” Departing from the form in which requests are usually made — under the rules of the court, in narrative form — the requests in each instance are put in interrogative form, “ whether or not.” The purpose of a request for findings is to find the facts material and pertinent to the issue. It certainly can not be said to be equally pertinent and material whether the answer be in the affirmative or the negative, because if it be not a fact then its importance at once disappears. As is very well stated by the, attorney for the claimants herein in one of his briefs, it is rarely proper for the court to find a “ negative fact.” Without regard, however, to that phase of the matter, the form in which these requests are propounded are not without some precedent. In the case of Union Pacific Ry. Co. v. United States, 116 U. S., 154, requests for findings made in substantially the same form as the one stated in the present motion were passed upon by the Supreme Court. A material difference, however, between the request here made and that in the case just referred to is that in that case the requests were made on or before the trial, and conformed in that respect to the rule of the Supreme Court. The present motion does not conform to the rule of the Supreme Court, in that it is made after the trial and after the court has decided the case, as above stated. In the Union Pacific By. case, after the requests had been made in substantially the same form as those now under consideration, the case *102 went to the Supreme Court, and a motion was there made by the claimant to require the Court of Claims to send up the evidence or to specifically find on certain requests for findings made by one of the parties and not passed upon specifically and in detail by the court. In refusing said motion upon that contention of the claimant, the Supreme Court said:
“The special findings which were requested and refused related to mere incidental facts which amounted only to evidence, and were therefore inadmissible as a part of the record to be sent here. They were in reality nothing more than requests for a finding of what the evidence was. The parties seem to have followed the suggestion on the former appeal, and, after looking over the entire field of service, they brought in everything which, in their opinion, could be of use to the court in determining what would be a reasonable compensation for the services rendered, subject to the requirement of the statute that it should not be more than was paid to private parties for the same kind of service. The question to be determined was one of fact as much so as the amount of recovery in any action' quantum meruit. A conclusion could only be reached by considering all the testimony, weighing the facts, and estimating their comparative value as evidence. This presented in no just sense a question of law. Every fact that was proven according to the motion was simply evidence, and as evidence had performed < its entire office when the facts were found. It has no place ' in the record which is to come here for review.”
Again, in McClure v. United States, 116 U. S., a motion was made to order up the evidence from the Court of Claims, or, in the alternative, to direct the court to make specific findings of fact. In that case it was said (p. 151):
“ The statement of facts on which this court will inquire, if there is or is not error in the application of the law to them, is a statement of the ultimate facts or propositions which the evidence is intended to establish, and not the evidence on which those ultimate facts are supposed to rest. * * The statement must be sufficient in itself, without inferences, or comparisons, or balancing of testimony, or weighing evidence, to justify the application of the legal principles which must determine the case. It must leave none of the functions of a jury to be discharged by this court, but must have all the sufficiency, fullness, and perspicuity of a special verdict. If it requires the court to weigh conflict *103 ing testimony, or to balance admitted facts, and deduce from these the propositions of fact on which alone a legal conclusion can rest, then it is not such a statement as this court can act upon.”
See also the court’s references to the case of United States v. Pugh, 99 U. S., 265, and The Francis Wright, 105 U. S., 381, 387. Referring to the last-named case the Supreme Court said:
“ But in the Francis Wright, 105 U. S., 381, 387, where the question was as to the kind of facts the court could be required to put in its findings, we said it did not include ‘ mere incidental facts which only amount to evidence bearing on the ultimate facts of the case.’ Questions depending on the weight of evidence must be conclusively settled below.”
In relation to the question of substantive right and the de-nml of justice, which go direct to the question of the exercise of sound judicial discretion, recurrence must be had to the opinions wherein the purpose and intent of the rules sought to be involved fully appear. It is manifest from what the Supreme Court said in each of the opinions cited that the purpose of the rules is to preserve an exception in behalf of litigants in the event this court refuses, “with the proper evidence before it, to find a material fact desired by either of the parties,” the remedial purpose of the rule being to enable the Supreme Court to determine whether the omitted question of fact is one so necessary to the decision of the case that it will be remanded for that purpose. The issue of fact presented by the record in this case lies within a very narrow compass, notwithstanding the volume of the record. The suit is to recover from the defendant Indians compensation for services rendered in their behalf in the matter of their claim to citizenship in the Choctaw Nation, the court being directed by the special grants of jurisdiction to render judgment upon the principles of quantum meruit. Confining ourselves at present to the claimant’s petition alone, what facts must be established to bring them within the act % The court need not answer the inquiry in any other manner than to refer to the record made by the claimants themselves. With most commendable detail, as the findings of the court show, the claimants made up a record, disclosing beyond *104 doubt that a large number of individual Mississippi Choctaw Indians by written contracts of employment engaged the claimants to advocate their cause, speaking broadly, at any time and any place where it might be of service to them in securing a claimed treaty right. Testimony was adduced relative to the character of service rendered and when and where it was rendered, what legislation was advocated, and what was passed, and other testimony deemed by the parties necessary and proper to sustain their contentions.
At least as early as March 1, 1907, other claimants filed motions for leave to intervene in the case, themselves claiming rights under the jurisdictional act, a claim so persistent that Congress on May 29, 1908, passed a second jurisdictional act enlarging the scope of the grant and including by particular names as well as under the general term “associates ” a large number of persons. Thereafter, in making up the record under their individual petitions, an acute, prolonged, and exceedingly disputatious record of facts confronted this court, not now speaking of the great volume of testimony introduced by the defendants contradicting the right of these claimants and each intervenor. From this record of conflicting testimony the court is charged by a positive rule of the Supreme Court to make up its findings “in the nature of a special verdict, but not the evidence establishing them.” In the discharge of this duty we attempted to follow the common law rules of evidence and to find as near as possible the ultimate facts reached after a careful analysis of the evidence in the case. The facts as found are not in all respects as the claimants averred them to be, nor are we required to find specifically as to a claimant’s averment in this respect. They are the special verdict of this court sitting as a jury. The motion now under discussion challenges this verdict, not by citing here and there an omission of a material fact, but by a series of inquiries it seeks to sustain a contention that the facts should have been found exactly as the claimants averred them to be.
If from the findings made by the court the Supreme Court on appeal finds the record insufficient because of the omission or refusal to find material facts, to review the conten *105 tions of the respective parties, it has been the rule of the court of its own or in response to claimants’ motion to promptly remand the case. This, indeed, is the full import and meaning of the rules. The court has found the facts as it believes them to be, and has further determined that in its judgment all material questions of fact have been found, and this result has been reached after repeated motions for new trial. The Supreme Court has never remanded a case for additional findings of fact solely because of the allegations of the parties that this court has misconceived the record, misjudged the testimony, and arrived at a verdict contrary to their view of tho facts. Under our jurisdiction, sitting as a jury in this respect, the duty under the law is peculiarly ours of weighing and analyzing the testimony, according to it the probative effect to which we believe it entitled, and then expressing our verdict in written findings of fact. If in the course of this proceeding we omit material facts, the way is open to correct the error, but the verdict of the court can only be challenged by a motion for a new trial.
The two cases cited are directly apposite, for in each instance requests were made before the trial of the case which complied in every particular with the rules, whereas in this instance we are asked to consider a very tardy motion, embodying the consideration of a record of testimony heretofore examined, reexamined, and carefully analyzed.
As a further means of ascertaining the issue now raised as to the omission of material findings, we find it indispensable to examine closely the specific requests now for the first time propounded. Before doing so, however, a general observation as to some of the language used in the requests is necessary. It is asked, and frequently repeated, whether or not the claimants, “ as representatives of the Mississippi C hoctaw,” did not do so and so “ in behalf of the Mississippi Choctaws.” This expression, “The Mississippi Choctaws,” standing alone is decidedly misleading. The issue, the real contest in this case, is the question as to whether or not the claimants represented or had authority to represent all the Mississippi Choctaw Indians. The claimants herein have *106 not shown such general employment; on the contrary, they introduced numerous contracts between themselves and individual Mississippi Choctaws, and upon these contracts relied for authority from these individuals to represent them. A single intervenor has relied upon a band or tribal contract. Therefore it is apparent that the use of the general designation always applied to the whole body of the Choctaw Indians residing in Mississippi is not to be loosely construed in the consideration of the present motion. It must be distinctly understood that the court, in treating the requests now made, approaches them all with the understanding that any reference made in this general way is limited to such individual Mississippi Choctaw Indians as employed the claimants by express agreement to represent them. We have not found, and the evidence does not warrant us in finding, that any single claimant had authority to or did represent the whole number residing in Mississippi.
Another observation of vital importance to the issues in the case becomes indispensable because it finds its way into the proposed requests by reason of the character of the services rendered by the claimants for which pay is claimed. The claim of the Mississippi Choctaw Indians to citizenship in the Choctaw Nation was never referred to a court for adjudication and determination. The Congress of the United States concluded the controversy by the enactment of various laws covering the claimed right, and it is for services in connection with the passage of these laws that the claim in issue arises, what is commonly called a “ legislative service.” For appearances before committees of Congress and other departments of the Government in behalf of a client interested in the passage of legislation an attorney may lawfully charge fees, but such a character of service is strictly limited. No compensation may be charged or collected, no contracts in reference thereto can be enforced, for any service extending in the slightest degree beyond this well-defined zone of limitation. The personal solicitation of aid from an individual legislator, aid rendered an individual legislator, representations and arguments made for or before an individual legislator, no matter how convincing or under what circum *107 stances, can not under the law be made the basis of a charge for professional services. Trist v. Child, 21 Wall., 450 The court in finding the facts and reaching its conclusion of law upon the issues involved in the case has adhered with inflexible rigidity to the principles of law laid down in Trist v. Child, supra. We have further elaborated upon this subject in speaking to the requests of claimants wherein in our judgment it is directly in issue.
For the sake of convenience in the orderly discussion of the requests, we will first set forth the request and follow it with the court’s comments thereon.
IX.
Whether or not the original contract, made June 23, 1896, and modified July 23, 1896, between Charles F. Winton and Robert L. Owen, provided that said Owen was to represent the claims of the Mississippi Choctaws before the proper officers of the United States and Indian Governments, and in which representation the said Winton was to assist and cooperate with the said Owen?
Finding IX of the court is exactly the same as it appeared in the tentative findings of December 7, 1914. Counsel for claimant, in his brief filed January 21,1915, made no objection to the same, and in open court on the oral argument stated “ no objections.”
In making up the appendix to the findings of the court we experienced more or less confusion with reference to copies of the contracts mentioned in this request. An examination of Exhibit No. 11 as printed in the record disclosed a contract dated June 2, 1896, the acknowledgment dated June 23, 1896. This, of course, aroused some doubt as to the precise identity of the paper, and we sought to find the originals among the files in the case, in which respect we failed. The finding of the court meeting with no objection upon the first hearing, we did not further pursue the search. When the present motion was brought to our attention, and the finding assailed, we again searched the record for copies of or the original contracts. Failing to find either, we authorized a notice to each of the attorneys of *108 record in the case to return at once to the files of this court all papers of whatever character which had been made a part of the record herein, and in response to said motion the original contracts mentioned were produced, the court being informed at the time, viz, January 23, 1917, that they had been found among the office files of Mr. William E. Eobeson, now deceased, who up to the time of his death was the chief attorney for the claimants. The contracts provide in terms as follows:
“ CONTRACT.

“Know all men by these presents:

“That I, C. F. Winton, for and in consideration of one dollar and other valuable considerations, the receipt whereof is hereby duly acknowledged, do hereby contract and agree that I will, with due diligence, proceed to Mississippi and Louisiana to secure a contract with such Indians as may be entitled to participate in any distribution of lands or moneys of the Choctaw and Chickasaw Nations; that I will arrange to secure the evidence, powers of attorney, and contracts then and there as prescribed by Eobert L. Owen; and for and in consideration of the premises I am entitled to receive one-half of the net proceeds of such cases as I personally obtain and send in to said Owen, and will be interested in none others.
“ I further contract and agree to assist J. E. Eeynolds to work a part of such country, in fair division, understanding that said Eeynolds has a similar contract with said Owen; and said Owen is to prepare the forms necessary for this operation and to represent the claims of these people before the proper officers of the United States or Indian Governments, having my assistance and cooperation when and where called for, being authorized to obtain other assistance on this account.
“In witness whereof I hereto attach my hand and seal this the 23rd day of June, 1896.
(Signed) “C. F. Winton.
“State oe Kansas,

“City of Wichita.

“Be it remembered that on the 23rd day of June, 1896, personally appeared before me C. F. Winton, to me well known, who having been duly sworn, acknowledged the execution of the foregoing contract as his free and voluntary act for the purposes therein mentioned.
*109 “ Witness my hand and official seal the day and year first above written.
“[seal.] (Signed) “J. N. RichaedsoN,

“Notary Public.

“My commission expires November 16, 1896.”
“ CONTRACT.
“This contract witnesses that C. F. Winton for valuable consideration, duly acknowledged, contracts that he acts as attorney in the Mississippi, etc., Choctaw and Chickasaw claims under agreement with R. L. Owen that said Owen has half interest in said contracts in contemplation without exception and in event of any accident to Winton is fully authorized to take them up as attorney in place of Winton. Witness whereof I hereto attach my hand and seal.
(Signed) “C. F. Winton.
“ Rcbt. L. Owen.
“Cleveland, I. T.
“ Received of R. L. Owen fifty dollars on a/c of expenses to Mississippi, etc., in the citizenship claims of the Choctaws and Chickasaws. Witness my hand this 24th July, 1896.
(Signed) “C. F. Winton.
“ Cleveland, I. T.”
We have set them out in full as an evidence of their consideration by the court with respect to their materiality and as to whether in the exercise of a sound judicial discretion we should reopen the case and make them now, as we formerly intended to do, a part of the appendix to the findings. It is apparent from the instruments themselves that they are immaterial and incompetent for any other purpose than establishing the relationship between Mr. Winton and Mr. Owen. The contracts are private agreements between Mr. Winton and Mr. Owen to which the Mississippi Choctaw Indians were not a party in any way; they were made prior to the employment of Mr. Winton and Mr. Owen by any individual Mississippi Choctaw Indian, and concern alone a division of service and fees for professional service, at the time prospective, and impose absolutely no binding obligation upon any other persons or property except the parties *110 signatory thereo. That Winton and Owen were associates is a conceded fact found by the court; under no circumstances can they be made the basis of a recovery for professional services against the defendant Indians.
X.
A. ’Whether or not the contracts referred to in the third paragraphs of the court’s finding 10 were taken for Winton and associates and some of them taken in the name of Winton?
Fact is immaterial. No dispute in the record concerning the association of Winton, Owen, and Daley or that the Daley contracts were taken in behalf of them. The contract is set forth in the appendix.
B. Whether or not the second series of contracts referred to in finding 10, page 5, of the court’s finding embraced 2,000 persons instead of several hundred, as stated in said finding?
Not sustained by the record. No evidence of 2,000 persons. .Record justifies the approximation made.
C. Whether or not all of the contracts referred to in the last paragraph of the court’s finding 10 are set out in the appendix to the findings, and
Whether or not the first series of contracts taken in the name of Winton contained a provision as follows: “do hereby contract and agree that Charles F. Winton, of Vinita, Indian Territory, that he shall be authorized to represent us in securing recognition of our citizenship in the Choctaw Nation, and the right to participate in the distribution of land or money in case the same should be brought about; * * * and that he is hereby authorized under the two powers of attorney executed to him this day, and which are made a part hereof, coupled with an interest, to represent us before any of the authorities of the United States, or before any authorities of the Choctaw Nation, where it may be necessary authorizing him where necessary to secure the cooperation of other attorneys, under the authority of this contract, and to incur in our behalf such expenses as may be necessary in prosecuting such claims.”
*111 When the above finding was made by the court, as clearly indicated by the language thereof, it was our intention to set out in the appendix to the findings a copy of the contract mentioned. Upon search through the record, however, the court was unable to find therein a copy of this particular form of contract, and hence it had to be omitted. The question now raised by the request not having been heretofore raised in motions of similar import filed by the claimants, the court assumed that the finding was satisfactory. On February 24, 1916, the claimants’ attorney transmitted a form of contract to the court by letter, in which he said: “ I am sending you the inclosed contract which, I think, is the form of the original Winton contract. I don’t believe it will be possible to locate the contracts, unless they be found in the clerk’s office, Department of Justice or Department of Interior.” This communication was addressed in response to a request made upon said attorney by the court in our effort to supply this apparent omission in the findings. The contract transmitted bore the date of August 19, 1896, and left the court in doubt as to whether it was one of the original contracts of employment.
Last request concluded by discussion of same under Finding IX.
XI.
A. Whether or not James S. Sherman was chairman of the Committee on Indian Affairs of the House of Representatives and not Representative Curtis, at the time and as stated in the third paragraph of the court’s finding 11?
Too frivolous to merit serious consideration. Representative Curtis testified as follows:
“ Question. Please state what Member of Congress, if you know, took the leading part in securing legislation favorable to the rights of the Mississippi Choctaw tribal lands in Indian Territory.
“Answer. While I was a Member of the House and a member of the Committee on Indian Affairs, I was chairman of the subcommittee having charge of the affairs in the Indian Territory, or, rather, the affairs of the Five Tribes. *112 As such chairman, I had charge of the legislation affecting the Five Tribes, and the first person to bring to my attention the Mississippi Choctaws was Hon. John S. Williams, now a Senator from Mississippi, then a Member of the House from that State.”
B. Whether or not Robert L. Owen, early in 1897, when he “ spoke ” to Honorable John Sharp Williams and submitted to him a copy of the Dancing Rabbit Creek Treaty, as stated in the second paragraph of finding 11, was at the time recognized by Mr. Williams as speaking in the capacity of an attorney at law in the behalf of the Mississippi Choctaws, and was then requested by Mr. Williams to prepare and submit to him a brief, letter, or written argument on the question of the matter of the claim of the Mississippi Choctaws to citizenship in the Choctaw Nation and with which request Mr. Robert L. Owen complied and furnished Mr. Williams with such a brief?
The fact requested is immaterial. Neither in virtue of an express contract nor upon a quantum meruit can a claim for compensation for professional services rendered by a claimant be augmented, much less predicated, upon the personal solicitations of and from a public Representative. The court has considered all testimony tending even in the direction of a claim for pay involving personal solicitation as immaterial and incompetent. In Trist v. Child, 21 Wall., 450, the Supreme Court said:
“We entertain no doubt that in such cases, as under all other circumstances, an agreement express or implied, for purely professional services is valid. Within this category are included drafting the petition to set forth the claim, attending to the taking of testimony, collecting facts, preparing arguments, and submitting them orally or in writing to a committee or other proper authority, and other services of a like character. All these things are intended to reach only the reason of those sought to be influenced. They rest upon the same principle of ethics as professional services rendered in a court of justice, and are no more exceptionable. But such services are separated by a broad line of demarcation from personal solicitation, and the other means and appliances which the correspondence shows were resorted to in this case.”
The court regards the request and ones of similar import as immaterial. Whether Mr. Williams regarded Mr. Owen. *113 as attorney for the Mississippi Choctaws is likewise immaterial and quite surely incompetent if elicited to establish the case referred under the jurisdictional acts.
C. Whether or not in 1897 Robert L. Owen presented an oral argument and written brief to the Honorable John Sharp Williams, then a Representative in Congress from the district in which the Mississippi Choctaws then resided, on the question and in behalf of the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation and in favor of their rights to participate in the partition of the lands of the Choctaw Nation under the provisions of article 14 of the Dancing Rabbit Creek treaty between the United States and the Choctaw Nation, of September 27, 1830?
Whether or not the written brief submitted by Mr. Owen to Mr. Williams was in accordance with the latter’s request ?
Inquiry immaterial. Subject covered by discussion under prior request.
D. Whether or not early in the year 1897 Robert L. Owen submitted an argument to Honorable John Sharp Williams, then a Representative in Congress from the 5th congressional district of Mississippi, wherein practically all full-blood Choctaws in Mississippi then resided, and, as the result of said arguments and documents submitted by him, Mr. Owen, or the interest created thereby, Mr. Williams became convinced, contrary to his original opinion, of the rights of said Mississippi Choctaws to share in the privileges of Choctaw citizens in the Choctaw Nation under article 14 of the Dancing Rabbit Creek treaty, entered into September 27,1830, by the United States and the Choctaw Nation?
Materiality disposed of by prior discussion. Trist v. Child, supra.
E. Whether or not in February, 1897, during the consideration by the Committee on Indian Affairs of the House of Representatives of House bill 10372, which recognized the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation, Robert L. Owen appeared and made an argument in behalf of the Mississippi Choctaws to citizenship in the Choctaw Nation and the said committee made a favorable *114 report on said bill, which report, in accordance with the request of the committee, was drawn and prepared by Mr. Owen.
The inquiry here propounded is fully covered by the facts found by the court in Finding XY.
F. Whether or not it is a fact that the Congressional Record fails to show any bill or resolution introduced by Honorable John Sharp Williams in behalf of the .Mississippi Choctaws or any remarks whatever made by Mr. Williams relative to the Mississippi Choctaws from 1896 to March, 1899.
Request is obviously immaterial. If the purpose is to impeach the testimony of Mr. Williams, no proper foundation is laid. Mr. Williams gave his deposition and was cross-examined in extenso, claimant’s counsel being present.
To ask this court to state as a finding, of fact that it has searched the Congressional Record covering a period of three years for the purpose of discovering the nonexistence of an alleged fact comes very close to an absurdity. The case does not involve the simple question of what Mr. Williams did not do. The issue presented concerns the positive fact, What did he do?
XII.
Whether or not Senator H. P. Money and Senator Walthall in 1896 acknowledged the receipt of letters from Charles F. Winton praying them to assist the Mississippi Choctaws;
Whether or not they pledged their support in then-replies to the said Winton — that is, that they would assist the Mississippi Choctaws.
Immaterial and incompetent under decision of the Supreme Court in Trist v. Child, supra. The letters mentioned should have never gone into the record; they are clearly inadmissible and found their way in by an attempt to make them exhibits to an oral examination of a witness other than the writer of the letters. They were never properly identified and no rule of evidence covering the introduction of papers of this character was observed. The letters upon their face show that they were not even written to the witness who presented them.
*115 XVI.
A. Whether or not Robert L. Owen drew House bill 10372 recognizing the rights of Mississippi Choctaws to citizenship in the Choctaw Nation and caused the same to be introduced in Congress.
The record discloses as found by the court that H. R. 10372 was introduced in Congress by Representative Allen. The fact elicited is immaterial under decision in Trist v. Child, supra.
Whether or not the amendment proposed by Senator Walthall to the Indian appropriation act of 1897 was an amendment in the same words as House bill 10372 recognizing the rights of the Mississippi Choctaws to citizenship.
The request is not for the finding of a fact. The inquiry elicits a conclusion. The findings of the court show the facts.
Whether or not said amendment was furnished to the said Walthall by Robert L. Owen.
Immaterial. Record furnishes no decisive evidence as to request. Service gratuitous under Trist v. Child, supra.
B. Whether or not the provision of the Indian appropriation act of June 7, 1897, set out in finding 16, p. 8, of the court’s findings, was inserted in said appropriation act in the Senate as the result of an effort made by Robert L. Owen and associates to have enacted a provision more favorable to the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation?
Facts found by the court in reference to this legislation are stated in the court’s Finding XVI.
The court in any event can not ascertain from the record that legislation resulted from individual effort. The Congress of the United States acts deliberately. The terms and provisions of any laws passed by Congress can not be attributed to any outside influence or said to result from any personal advocacy of the same, and a claim for pay for legislative services goes no further than the specific things usually performed by an attorney in a court of justice, the very precise steps mentioned by the Supreme Court in Trist v. *116 Child, supra. The court can only find from the records of Congress what transpired with reference thereto. There is no competent evidence in the record upon which the court can predicate a finding in response to the above request. The fact sought to be elicited is a conclusion and not the statement of a fact.
XVIII.
Whether or not the record shows that Senator Wal-thall caused to be drafted the amendment set out in finding 18, providing for the identification of the Mississippi Choctaws and which was put into the act of June 28,1898, in an amended form.
Immaterial. Facts in reference thereto fully covered by the court’s Finding XVII. The question as to whether Senator Walthall did or did not draft the said amendment is not of importance to the issues in this case. What a Senator of the United States did in his official capacity throws no light upon the claimant’s right to compensation for professional services, although the subject matter of the legislation may affect his clients. It would not even afford assistance to the claimants if he did so at their personal request. The parties to this suit are the claimants and the Mississippi Choctaw Indians.
XIX.
Whether or not after the sending out to the Mississippi Choctaws of the circular letter dated July 1, 1898, set out in finding 19, pp. 9 and 10, of the court’s findings, Charles F. Winton and associates or employees went personally into the various counties where the Mississippi Choctaws lived in Mississippi and sent runners or messengers throughout the country districts urging the Mississippi Choctaws to appear before the Dawes Commission for identification ?
The record furnishes proof, competent testimony, that Charles F. Winton hindered, delayed, and annoyed the commission in its work in Mississippi. This appears positively from the testimony of Commissioner McKennon, who, in fact, publicly rebuked Mr. Winton for his conduct. It is corroborated by the reports of the commission, and is clearly *117 shown to have been active and continuous. It is nowhere contradicted by any competent evidence in the record. That his conduct at this time was contrary to the understanding and instructions of Mr. Robert L. Owen appears, but Mr. Owen was not with Mr. Winton in Mississippi, and Mr. McKennon was. The record is indisputable as to the correctness of the court’s finding upon this subject. It is nowhere contradicted at any place in the record except by a voluntary statement in an ex parte affidavit made by Mr. Winton, which is obviously incompetent.
XX.
A. Whether or not the full-blood rule of evidence was adopted by A. S. McKennon in the report of March 10,1899, as the result, wholly or in part, of the argument and efforts made by Robert L. Owen.
If the request is material the fact is not susceptible of proof. The report of Commissioner McKennon is set forth in the findings. The inquiry seeks to elicit a conclusion. As before observed, we can not find from the proof in the record — as a fact — that certain public officials did this thing or that as a result of some one’s argument. It is possible that they may have had convictions of their own. We set forth what they did, and if they give reasons therefor, find the same.
Whether or not the said McKennon immediately afterwards became a member of the firm of Mansfield, McMurray & Cornish, who thereafter fought the full-blood ride of evidence and attempted to have it repealed by the Choctaw-Chickasaw agreement as submitted February 23,1901, and March 24,1902 ?
The request is plainly argumentative and suggestive. We find nothing in the record impugning the sincerity of Commissioner McKennon in the discharge of his public duties.
B. Whether or not it is a fact that no witness testified in support of the fact stated in the second paragraph of finding 20, page 12, of the court’s findings, and that Winton at the time mentioned in said findings stated to Commissioner McKennon that he was not interfering with but assisting in causing the Indians to come before the commission for identification, *118 and that at least four witnesses testified that Winton and employees at that time were trying to get the Indians to come before the commission for identification?
The request as framed is clearly argumentative. It is fully answered in the court’s findings. It is likewise subject to criticism as a repetition of the same request in Finding XIX. It is not a request for a finding of fact. It is impertinent and irrelevant.
C. Whether or not the Alphabetical Index of the names of 16,000 Choctaw Indians, prepared and printed by Mr. Owen, with page references to evidence showing their pedigree, stated in finding 20 of the court’s findings at bottom of page 12, as furnished to Commissioner McKennon by R. L. Owen was of great value and assistance to the Dawes Commission in identifying the Mississippi Choctaws ?
Fact has been found and appears in the last paragraph of the court’s Finding XX, p. 12.
XXIII.
A. Whether or not the amendment proposed by Senator James K. Jones in April, 1900, to the Indian appropriation act relative to the Mississippi Choctaws was in the identical words of thepetition Winton and his associates addressed to the Congress and printed as a Senate document;
Whether or not he explained to the Senate that this amendment was offered at the instance of the representatives of the Mississippi Choctaws.
B. Whether or not Robert L. Owen and associates prepared and caused to be presented to Congress and contended for the passage and enactment of the provision in the Indian appropriation act of May 31, 1900, set out in the second paragraph of finding 23, on page 13 of the court’s finding?
A. This is not a request for a finding of fact. The memorial referred to is set out in the court’s findings, and the legislation adopted follows in the next findings. There can be no difficulty by a comparison of the two in reaching a conclusion.
*119 The record is silent as to the second request. The Congressional Eecord on the subject does not mention the alleged representatives of the Mississippi Choctaws. Fact, if found, is immaterial.
B. This request calls for no finding as to appearances before committees of Congress. The authorship of the legislation has been the subject of acute controversy, as appears by the record. The authorship of the second proviso is conceded. The record sustains the court’s finding and does not sustain the making of such a positive statement of fact as the inquiry seeks to elicit. The court’s finding is the ultimate fact arrived at by an analysis of the testimony introduced, testimony decidedly conflicting.
XXIY.
A. Whether or not the Dawes Commission and the Interior Department were from 1896 to March 10, 1899, when they yielded and adopted the full-blood rule of evidence, opposed to the enrollment of the Mississippi Choctaws as Choctaw citizens;
Whether or not the Dawes Commission did not later reverse itself, about the time McKennon, in June, 1900, left the commission and became a member of the firm of Mansfield, McMurray & Cornish, employed by the Choctaw Nation to cause the commission to nullify the act of May 31,1900, which that commission did by a harsh, technical, and restricted construction of said act;
Whether or not in the report of the Dawes Commission of May 19, 1902, the reasons of the Dawes Commission for such opposition were fully set up and were sustained by the Secretary of the Interior in his letter of June 3, 1902, thereby destroying and reversing the directions given by him to the Dawes Commission to follow the full-blood rule of evidence in his letters of August 26,1899, and October 19,1900, as stated in the last paragraph of the court’s finding 24 ?
B. Whether or not the Dawes Commission followed the full-blood rule of evidence in accordance with the directions of the Secretary of the Interior in his letters of August 26, 1899, and October 10, 1900, and referred to in the court’s findings 24 ?
*120 Whether or not the Secretary of the Interior for a time acquiesced and, in fact, approved the action of the Dawes Commission in not following said directions?
The above requests are manifestly argumentative and involve the statement of a conclusion. The court has found from the record exactly what the Dawes Commission did in considering this matter and followed it with the official action of the Secretary of the Interior. In the court’s opinion the attitude of the commission is fully discussed. The findings of fact must avoid conclusions. Taking the above requests as a whole, the proper place for the insistence is in the briefs of counsel. The court’s findings, afford ample means from which proper deductions as to the attitude of the commission can be made. The subject is treated extensively in the same.
XXIX.
A. Whether or not the amendments to the agreement which later became the ac; of July 1, 1902 "providing for and adopting the full-blood rule of evidence, longer time within which to apply for identification and longer time within which to remove to the Choctaw country west, after notification of official identification, were amendments agreed to in the Committee on Indian Affairs of the House of Representatives before which Robert L. Owen made an argument in support of said amendments in behalf of the Mississippi Choctaws while said committee was considering said questions?
In claimants’ second amended petition filed in this court appears the following allegation: “The bill of July 1, 1902, known as the Choctaw-Chickasaw agreement, passed over the protest of your petitioners, and in spite of every effort that they could make for its proper amendment.” This petition is verified by Wm. H. Robeson, attorney for petitioners, and Robert L. Owen, appearing for himself.
Subsequently on page 299 of the record Robert L. Owen testifies as follows:
“In spite of our protest the Choctaw-Chickasaw agreement was passed through Congress July 1, 1902.”
*121 Again, at page 2576 of the record, the witness states:
“ The service I tried to render in opposing the legislation of 1902 was in opposing injurious restrictions on the rights of the Mississippi Choctaws, and in this attempt I failed, and I do not think I rendered much service in this appeai'ance, although I endeavored to do so.”
B. 'Whether or not the act of May 31, 1900, would have given the Mississippi Choctaws all the relief necessary and more than the act of July 1,190%, if the act of 1900 had been correctly interpreted by the Dawes Commission and as later construed by Assistant Attorney General Yan Devanter, as stated in his opinion of December 2, 1901, and approved by the Secretary of the Interior ?
This is obviously not a request as to a specific fact. Any response thereto involves a conclusion, not of fact but of law. It is argumentative.
C. Whether or not the Secretary of the Interior in his letter of May 14,1902, to the United States Senate contemplated such correct interpretation as that given in the said opinion of Assistant Attorney General Yan Devanter under date of December 2, 1901?
There is absolutely no evidence in the record from which we can ascertain the “contemplation” of the Secretary of the Interior. This request asks for a conclusion deducible alone from the Secretary’s conduct and written communications.
D.Whether or not the memorials prepared and caused to be presented to Congress, to both the Senate and the House of Representatives, by Robert L. Owen, Winton, and associates during the period from July, 1896, to 1906, the arguments before the committees of the Senate and of the House; the arguments before the Dawes Commission, the United States courts, the Attorney General, the Interior Department, the officials of the Choctaw Nation, and Members of Congress created a powerful sentiment in favor of granting by legislation the rights of the Mississippi Choc-, taws to citizenship in the Choctaw Nation, causing Congress to pass numerous acts in their interest and the identification of 1,643 Choctaws and their allotment and enrollment on a separate roll known as the Mississippi Choctaw roll?
*122 We need indulge in no further comment with respect to this request than to say it is not a request for a response as to whether there is proper evidence to prove a material fact. It asks for a conclusion — a conclusion which is one of the crucial issues in the case. The request is argumentative. This, court is unable (and it is no part of the issues in this cause) to find whether or not what the claimants said or did produced a “ powerful sentiment ” for the passage of legislation advocated by them.
E. Whether or not from 1896, when Eobert L. Owen and Charles F. Winton first became representatives of th. Mississippi Choctaws in the matter of the claim of the Mississippi Choctaws to citizenship in the Choctaw Nation, to 1906, they, as attorneys for said Mississippi Choctaws, persistently and continuously prosecuted the claim of the Mississippi Choctaws to citizenship in the Choctaw Nation and made arguments, both oral and written, in support thereof to Congress, committees of Congress, Members of Congress, the Secretary of the Interior, the Bureau of Indian Affairs, the Dawes Commission, and the officers and representatives of the Choctaw Nation?
There is no evidence in the record establishing the fact that Eobert L. Owen and Charles F. Winton ever became the representatives of the Mississippi Choctaws as a body. That is one of the most important issues in the case. The remainder of the request is fully answered in the court’s findings.
Whether or not during said period Eobert L. Owen was recognized by the committees of Congress, Members of Congress, and other officials of the Government and of the Choctaw Nation, as the attorney for the Mississippi Choctaws in their effort to obtain their rights to citizenship in the Choctaw Nation, then made before Congress and its committees s
The fact, if shown, is immaterial. The issue is not what the committees of Congress, etc., recognized as the true representative capacity in which claimants appeared. The court is trying a lawsuit committed to it by special acts of jurisdiction, and proof must be adduced showing the true relationship between the claimants and the Indians. This ob *123 viously can not be done by attempting to show that certain people recognized the claimants as appearing in a certain capacity, and any evidence tending toward that end is incompetent and immaterial. The parties mentioned were not charged with an investigation of this particular fact.
F. Whether or not Robert L. Owen, as the recognized attorney for the Mississippi Choctaws, from 1896 to July 1, 1902, contended for and supported by argument, written and oral, the adoption by Congress of the full-blood rule of evidence in behalf of the Mississippi Choctaws in the matter of their claim to citizenship in the Choctaw Nation, then being considered by Congress and the committees of Congress?
Whether or not any of the 1.643 Mississippi Choctaws enrolled as such would have been or could have been enrolled and admitted to citizenship in the Choctaw Nation under the law existing at the time of enrollment without the adoption and use of the said full-blood rule of evidence?
The request, in its first paragraph, begins by stating a conclusion. The fact as to the full-blood rule of evidence is fully covered in the court’s findings.
The second paragraph is argumentative and asks the court to find as a fact what is apparently a conclusion, involving in the findings a construction of a statute.
G. Whether or not Robert L. Owen, as the recognized attorney for the Mississippi Choctaws, while the Choctaw-Chickasaw agreement was pending in Congress and before its committees the first six months of 1902 contended for and supported by arguments, written and oral, an amendment to said agreement granting to the Mississippi Choctaws a longer period of time after identification as Choctaws within which to remove to the Choctaw country west than that originally provided for therein?
Heretofore fully answered in the court’s findings.
H. Whether or not Robert L. Owen, as the recognized attorney for the Mississippi Choctaws, while the Choctaw-Chickasaw agreement was pending in Congress and before its committees during the first six months of 1902 contended for and supported an amendment to said agreement granting to said Choctaws a longer period of time within which to apply *124 for identification as a Choctaw citizen than that originally provided for therein ?
The facts embodied in the request are fully answered in the court’s findings both as to the material fact and the capacity in which the claimants appeared.
I. Whether or not the full-blood rule of evidence provided for in the amendment drafted by Mr. Mc-Murray, attorney for the Choctaw Nation and Assistant Attorney General Van Devanter, which later became a part of the act of July 1,1902, was drafted by said parties in the way of a compromise settlement of and to end the long and somewhat furious contest made by Robert L. Owen and associates for a larger and fuller recognition of the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation?
Whether or not the adoption by said amendment of the full-blood rule of evidence as a compromise substantially granted the amendment contended for by Robert L. Owen, as attorney for the Mississippi Choctaws and as prayed for in the memorial prepared by Robert L. Owen and associates, and which they caused to be presented to the House and Senate April 24, 1902, wherein it was prayed that the full-blood rule of evidence be adopted and the full bloods be admitted and given time for identification as full bloods and citizens of the Choctaw Nation, and time within which to remove to the Choctaw country west ?
The request repeats an inquiry as to facts heretofore requested, is argumentative, and asks for a conclusion. The material facts as to the legislation of 1902 are to be found in the court’s findings.
J. Whether or not Mr. McMurray and Mr. Van Devanter, who drafted the amendment recognizing the full-blood rule of evidence, did so at the instance of Hon. J. S. Sherman, chairman of the Committee on Indian Affairs of the House of Representatives, before whom Robert L. Owen had argued in favor of the full-blood rule of evidence?
K. Whether or not this direction of Hon. J. S. Sherman to Mr. McMurray to prepare such an amendment was in effect instructions to prepare it for use as a committee amendment ?
Whether or not this draft by Mr. McMurray was presented on the floor of the House by Mr. Curtis, a *125 leading member of the Indian Committee, and the member in charge of the Choctaw-Chickasaw agreement then pending on the floor ?
J. The facts asked for in this request are fully covered in the court’s findings. It is quité immaterial as to who requested Mr. MeMurray or Mr. Van Devanter to draft this legislation; even if the claimants had done so it would be a gratuitous service.
K. Argumentative and asks for a conclusion and not a fact.
The second paragraph is answered in the court’s findings.
L. Whether or not claimants’ motion for a new trial filed July 25,1916, and, without hearing or argument thereon, overruled December 11, 1916, alleged newly discovered evidence supported by a letter written by Tams Bixby on September 23, 1915, which letter is published as a part of a congressional document, the material or relevant portion of said letter being set out in subsections M and N hereof ?
Whether or not the Tams Bixby who wrote said letter of September 23, 1915, was the same Tams Bixby who was a member of the Dawes Commission from 1896 to 1906, and part of that period chairman of said commission?
M. Whether or not the following statement—
“ Those representing Mississippi Choctaws strenuously contended that the full-blood rule of evidence should be -adopted and that the schedule of March 10, 1899, should be recognized as binding. This schedule was erroneous in many particulars, as the Dawes Commission discovered upon a critical examination of it; but finally, in order to adjust this controversy, a compromise was reached when the Choctaw-Chickasaw agreement of 1902 was passed on in Congress, so that an amendment providing for the full-blood rule of evidence was adopted, so drawn, however, as to recognize only those who were living full bloods and not recognizing their half-breed children. It was thought better by the Government authorities to yield this point as a settlement of the controversy, as the friends of the Mississippi Choctaws were demanding very much larger concessions ”—
made by Mr. Tams Bixby in his letter of September 23,1915, is true as shown by the record in this case?
*126 The contents of this finding, its materiality, and the court’s action thereon are fully discussed in the first part of the court’s opinion herein.
N. Whether or not it affirmatively appears and is uncontradicted by the evidence that Robert L. Owen, as the recognized attorney for the Mississippi Choctaws, acquiesced in and favored the act of July 1, 1902, as a compromise measure after it had been amended so as to protect the Mississippi Choctaws by the adoption of the full-blood rule of evidence ana other amendments granting relief to the Mississippi Choctaws?
The request is argumentative, seeks a conclusion, is a repetition, and in so far as at all material has been heretofore commented upon.
O. Whether or not the following statement made by said Tams Bixby in his said letter of September 23, 1915—
“ On the 31st day of May, 1900, Congress passed an act that Mississippi Choctaws ‘ duly identified ’ by the Dawes Commission might remove to the Choctaw country West at any time before the rolls closed.
“ Many applications were made under this act for identification. The Dawes Commission decided that any person to be ‘ duly identified ’ must prove that his ancestors had complied with the conditions of the fourteenth article of the treaty of 1830, and that he was a lineal descendant of such ancestor. After examining nearly every case which had been enrolled under the schedule of March 10, 1899, the commission decided that only a very few individuals would be entitled to enrollment as ‘ duly identified.’ Neither the Dawes Commission nor the Interior Department felt that it had a right by loose interpretation to- permit the Mississippi Choctaws to absorb millions of dollars of property vested by law in the Choctaw Nation West unless it were done upon the direct and express authority of Congress. It did not seem right that those who had lived in Mississippi for generation after generation, and who had taken no part in developing the Choctaw country West, should have the right to joint ownership of this property unless they could prove themselves entitled by competent evidence, and this they could not do. For that reason the Dawes Commission and the Interior Department were op *127 posed to their enrollment and in the report of ‘the Dawes Commission of May 19,1912, the reasons of the Dawes Commission were fully set up and were sustained by the Secretary of the Interior in his letter of June 2, 1902.
“ The Choctaws and Chickasaws West naturally felt that they were not called upon to divide this estate with persons who had not lived with them fox-oyer 70 years and they were opposed to admitting Mississippi Choctaws who could not support their claim by adequate and competent evidence, and for this reason the agreement was presented to Congress February 23, 1901, and also March 24. 1902, providing that only Mississippi Choctaws ^duly identified’ should be admitted ”—
is true and is fully supported by the evidence in this case.
The request is a repetition and is argumentative. The Bixby letter is not in the record, and the subject matter of the same has been fully answered in a former portion of this opinion.
P. Whether or not the amendments of sections 41 and 42 of the agreement which later became the act of July 1, 1902, set out in finding 29, were caused to be enacted as a result of the long contest from 1898 to July 1,1902 inclusive, waged by Robert L. Owen and Charles F. Winton and associates in behalf of the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation as provided for in said amendment ?
Q. Whether or not all of the oral evidence in the present case is to the effect that Robert L. Owen, Winton, and associates contended for and wex-e in favor of and labored from 1896 to July 1, 1902, especially during the first six months of the year 1902, as attorneys for the Mississippi Choctaws, for the passage of remedial legislation for the relief of the Mississippi Choctaws similar to and the same as the provisions of the act of July 1,1902, as finally enacted, and that not one witness testifies that Robert L. Owen nor any of the associates of Winton opposed or protested against the said provisions of said act contained in the committee amendments mentioned in finding 29, granting relief to the Mississippi Choctaws?
R. Whether or not said Robert L. Owen, as the recognized attorney for the Mississippi Choctaws from *128 July, 1896, to 1906, persistently, forcefully, and successfully represented said Mississippi Choctaws and their interests in the matter of their claims as to citizenship in the Choctaw Nation, then pending before Congress, by causing memorials in their behalf to^be presented to the Congress, making arguments before the committees of the Congress and the officials of the Government and the Choctaw Nation?
Whether or not the labor of Robert L. Owen in behalf of the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation, from July, 1898, to 1906, resulted in any benefit or value whatever to the Mississippi Choctaws?
We have grouped the above requests and will discuss them generally, pursuing this policy because it is evident that their similarity, both as to subject matter and verbiage, indicate that they are simply and solely a repetition of several preceding requests upon the same matter, with the added feature of emphasis and positiveness.
If the court were required to respond to the requests, it is patent that it would be expressing in the findings a conclusion already expressed in the opinion of the court. We need not repeat the issue as to who were the representatives of the Mississippi Choctaw Indians as a body, nor need we again go into the legislation of 1902. The facts appertaining to the subject have been found and discussed. It adds nothing to the force of claimant’s contention to emphasize and repeat requests for specific response to interrogatories as contained in the requests, nor is it at all conducive to their proper consideration to make them general and argumentative. Findings of fact serve the purpose of setting in view the origin, progress, and conclusion of the subject matter at issue. No light is thrown upon the issue by interspersing among the many findings a number of conclusions or stating arguments in support thereof. There is not embodied in these requests the statement of a single fact which has not been responded to in some form in the findings of the court as they now are, and it would be a useless and prolonged proceeding to continue to repeat the comment and discussion previously made upon this identical subject.
*129 In request identified as “ Q ” the inquiry is decidedly impertinent, immaterial, and suggestive.
XXXI.
A. Whether or not the services rendered by Bobert L. Owen, Winton, and associates, from 1898 to 1906, inclusive, in behalf of the claim of the Mississippi Choctaws to citizenship in the Choctaw Nation pending in Congress and before its committees during that time has ever been paid for by anyone?
The request as worded is immaterial, the question being whether paid for by the defendants. Payment would be a matter of defense; the fact that payment is not positively found is the equivalent of a negative. The court has made no findings upon issues not involved.
B. Whether or not during the period from 1896 to July 1, 1902, inclusive, while the matter of the claim of the Mississippi Choctaws to citizenship in the Choctaw Nation was pending in Congress and before its committees, those representing the -Mississippi Choctaws strenuously contended that the full-blood rule of evidence should be adopted and that the schedule of March 10, 1889, should be recognized as binding, and, finally, during the early part of 1902, in order to adjust this controversy a compromise was reached when the Choctaw-Chickasaw agreement of 1902 was pending before Congress and its committees so that the amendment providing for the full-blood rule of evidence was adopted for the reason that it was thought better by the Government and Choctaw Nation authorities to yield this point to the Mississippi Choctaws as a settlement of the controversy for the friends of the Mississippi Choctaws were demanding very much larger concessions?
The request is argumentative and asks for a conclusion. The language, in any event, is too general. We are only concerned with the parties claimant in this court. The material facts of the subject matter have already been found.
C. Whether or not during the period from July, 1896, to 1906, Bobert L. Owen in representing the Mississippi Choctaws as their recognized attorney labored to protect their rights which resulted in ob- *130 tn.inirig the recognition and legalizing of their rights to citizenship in the Choctaw Nation, expended approximately $35,000 in cash for which he has not been reimbursed;
Whether or not he has received any compensation for the services rendered or expenses incurred in behalf of the Mississippi Choctaws?
Any response to the first paragraph would be the expression of a conclusion.
No competent evidence in the record upon which an answer to the first or second paragraph could be predicated.
D. Whether or not during the period from July, 1896, until the compromise settlement was made by the Choctaw-Chickasaw agreement, act of July 1, 1902, save and except when they adopted the full-blood rule of evidence, March 10, 1899, and abandoned it in 1900, when McKennon entered the employ of the Choctaw Nation West as a member of the firm of Mansfield, McMurray & Cornish, the Choctaw Nation and the Dawes Commission, especially members Mc-Kennon and Bixby, were opposed to recognizing the rights of the Mississippi Choctaws to citizenship in the Choctaw Nation and contended that they had no rights and ought not to be enrolled as such citizens and that no attention should be paid to their said claims to citizenship in the Choctaw Nation?
This request is a repetition, is argumentative, suggestive, and involves a conclusion.
Whether or not during that same period of time, 1896 to July 1,1902, Robert L. Owen was consistently representing the interests of the Mississippi Choctaws before the committees of Congress, and the Commissioner of Indian Affairs, and the Interior Department, and before the Choctaw Nation authorities, and the Dawes Commission, making arguments in their behalf and contending for the rights of the Mississippi Choctaws to citizenship-in the Choctaw Nation?
E. Whether or not the 1,643 Mississippi Choctaws who were admitted to citizenship in and received allotments as members of the Choctaw Nation obtained the right to become such citizens and thereby receive allotments as a result to any extent whatever of any of the labor and work done by Robert L. Owen and associates during the period of several years prior to the passage of the acts under which they *131 were enrolled and allotted; and wbat compensation is equitable or justly due therefor on the principle of quantum meruit as required by the jurisdictional act in this case?
F. "Whether or not, as a result of the remedial legislation enacted by Congress during the years 1896 and 1906, inclusive, 1,643 Mississippi Choctaws have been admitted and enrolled as citizens of the Choctaw Nation and have received as a result thereof property interests w.orth at least $15,000,000 ?
G. Whether or not each of the 1,643 Mississippi Choctaws identified and enrolled as citizens of the Choctaw Nation as a result of the remedial legislation enacted by Congress during the years from 1896 to 1906, inclusive, have received an estate or property interests worth at least $9,000?
H. Whether or not a fair, reasonable, equitable, or . just compensation on the principle of quantum meruit for the services rendered the Mississippi Choctaws in the matter of their claim to citizenship in the Choctaw Nation from 1896 to 1906, inclusive, is a sum equal in amount to 6 per cent of the total value of the property interests received by said Mississippi Choctaws, or 6 per cent of $15,000,000.
I. Whether or not Eobert L. Owen, generally understood to be and as the recognized attorney for the Mississippi Choctaws by the chairman of the Committee on Indian Affairs of the House of Representatives, “appeared several times each Congress before the, Committee on Indian Affairs in behalf of the Mississippi Choctaws ” while the matter of their claim to citizenship in the Choctaw Nation was pending before said committees from 1896 and. 1906;
Whether or not the said services and efforts of Eobert L. Owen “to secure their recognition was unceasing, assiduous, constant, faithful, efficient, and of great value to the Mississippi Choctaws,” as testified to by Mr. Curtis, Mr. Jones, Mr. Mqpey, Mr. Sherman, Mr. Little, and Mr. Stephens, all Members of Congress during said period ?
We have grouped the preceding requests. It is obvious that they are not requests for specific findings; they are the contentions of the claimants in the case at bar. The court has found fully as to the facts; these requests go to the correctness of the findings, not the omission of material facts. *132 They seek conclusions and are properly a part of the claimant’s brief. On their face they exhibit the fact that the designed purpose is to challenge the verdict of the court as to the facts found from the record. They contain many repetitions and in no particular come within the rules. There is no competent proof in the record as to the actual value of the Indian allotments. If there had been, the court would have so found. A response to the above findings would be misleading and of no assistance' to a reviewing court, for they are general and comprehensive; they offer no details from which conclusions could be reached, but in their very language assume the establishment of certain facts not proven to the satisfaction of the court.
XXXII.
A. 'Whether or 'not the intervenor, Ealston, Sid-dons, and Eichardson, on the 4th day of March, 1911, and the claimants on the 20th day of February, 1915, filed a motion for permission to amend the petition herein by making the United States a party defendant to this case; and if so, what action was taken on said motions, respectively, and when was action taken on each of said motions?
A motion of this character was made and overruled by the court. See page 86 of the Chief Justice’s concurring opinion, wherein it is said:
“ the court are agreed that the United States can not be made defendants in this proceeding.”
Through some inadvertence the entry was not made in the docket. The court has ordered the proper docket entries to be made lest some injustice might be done.
The facts covered by this request would in no event be entitled to appear in the findings of the court. They are a part of the docket entries with reference to the proceedings in this case and go into the transcript of the record which is certified to the Supreme Court on appeal.
All this could have easily been called to the attention of the court on a single motion, and should have been done long before this.
*133 B. Whether or not the act of May 31, 1900, limited the time within which the Mississippi Choctaws could remove to the Choctaw country west to six months after identification, as did the act of July 1, 1902?
C.Whether or not the act of May 31, 1900, required the Mississippi Choctaws to submit proof of their removal within twelve months after the date of identification, as did the act of July 1, 1902 ?
D. Whether or not the act of May 31,1900, required the Mississippi Choctaws to continuously reside for three years upon the land of the Choctaw-Chickasaw Nation before allotment, as did the act of July 1, 1902?
E. Whether or not the act of May 31,1900, required a Mississippi Choctaw to make proof of continuous residence for three years on the Choctaw land within four years after enrollment, as did the act of July 1, 1902?
F. Whether or not the act of May 31, 1900, limited the time within which the Mississippi Choctaws could apply for identification and enrollment as a citizen of the Choctaw Nation, as did the act of July 1,1902?
All of the above requests call for the construction and interpretation of acts of Congress, matters of judicial opinion.
The court, having examined in detail the said motion for the purpose of ascertaining if any material finding of fact has been omitted from its findings, and for the further purpose of discovering the extent to which it ought to go in exercising its discretion under the rules, believes the motion for leave to file said motion embodying the requests above noted should be denied. We are unable to conclude, as appears by the foregoing opinion, that the claimants, by the aforesaid motion, have brought to our attention any error of a substantive character which in anywise disturbs the court’s conclusions as to the correctness of the findings heretofore announced.
The motion for leave to file said motions will be overruled. It is so ordered.
Hat, Judge, Downet, Judge, Baenet, Judge¡ and Camf-beul, Chief Justice, concur.